Cleveland, C., C. and St. L. R. Co. v. Clifford Best.

1. EVIDENCE—*When Transactions of a Deceased Agent May be Proved.*—One party to a suit may testify as to the transactions of a deceased agent of the other party with persons not parties to the suit. It is only conversations and transactions between the party suing a deceased agent of the principal sued that are excluded.

2. SAME—*Readiness to Pay Fare.*—Where one of the issues in a suit against a railroad is whether the plaintiff was a passenger, to be carried for fare paid, or ready to be paid, he should be allowed to testify that he had money sufficient to pay his fare.

3. PASSENGERS—*Relationship of Carrier and Passengers — How created.*—One who takes a car in which passengers are carried, thereby

contracts an enforcible obligation to pay fare, and thus becomes entitled
to the rights of a passenger.

4. SAME—*Not Chargeable With Notice of Rules of Carrier.*—A
person dealing with a railroad company is not chargeable with notice
of the orders and rules of the company, and if a caboose is used for the
carriage of passengers, the company will be liable as a carrier of pas-
sengers to persons using it, although such use may be against its rules.

**Trespass on the Case,** for personal injuries. Appeal from the Su-
perior Court of Cook County; the Hon. JAMES GOGGIN, Judge, presid-
ing. Heard in this court at the October term, 1896. Affirmed. Mr.
Justice GARY dissenting. Opinion filed January 21, 1897.

REMY & MANN, attorneys for appellants; JOHN T. DYE,
of counsel.

WILLIAM STREET, attorney for appellee; JOHN WINANS
and WILLIAM RUGER, of counsel.

MR. JUSTICE WATERMAN gave the following as his rea-
sons for thinking that the judgment of the Superior Court
should be affirmed.

This action was brought by appellee to recover damages
for personal injuries received by him while, as he alleges,
he was a passenger on a freight train of appellant.

It appears that appellee arrived in the city of Cincinnati,
Ohio, on the morning of March 9, 1892, about 8 o'clock.
He came to Cincinnati over the Queen and Crescent Rail-
road and left the train at the Union depot. This depot was
used jointly by appellant, the Queen and Crescent and other
roads. From Cincinnati appellee intended to go to Indian-
apolis. Regular passenger trains upon appellant's road left
the Union depot on that day and arrived at Indianapolis at
the following times: One at 8:30 A. M., arriving at Indian-
apolis at 11:50 A. M. One at 1:10 P. M., arriving at Indian-
apolis at 5 o'clock P. M. One at 7:30 P. M., arriving at 10:45
P. M. One at 8 P. M., arriving at 11:45 P. M. All of these
trains were first-class through passenger trains. There
was also a passenger train leaving at 6:10 A. M., which was
a local train. Appellee was about the city of Cincinnati

until half past eleven or twelve o'clock, when he went to Riverside, a station three and eight-tenths miles from the Union depot, arriving there between eleven and twelve o'clock. He remained about the station until he went upon a freight train known as the second section of No. 55, which that day left Riverside at 3:50 P. M. He went into the caboose attached to that train, ten or fifteen minutes before it left for Indianapolis. The train was an ordinary freight train loaded with coal and miscellaneous merchandise. Attached to the freight train was what is known in railroad parlance as a "dinky" caboose; that is, a car about twenty feet long, having four wheels, and having boxes along the sides in which tools, lamps, links, pins and the general supplies of the train were carried. The lids of these boxes were cushioned with excelsior covered by oil cloth or canvas. There was a ladder or steps near the center of the caboose leading to a cupola upon the roof. The car also contained a stove. The conductor of the train stood facing appellee, near the car, when appellee entered it. While appellee was sitting in the car, two men and a woman came into the car, who rode two or three stations, about ten miles. These persons, he testified, gave the conductor pieces of pasteboard three or four inches long and about two inches wide, which looked like tickets, and which the conductor punched and put into his pocket. This testimony was subsequently stricken out on motion of appellant, because of the death of the conductor prior to the trial. The train, under ordinary circumstances, would have reached Indianapolis from three to six o'clock the next morning, the distance between Riverside and Indianapolis being one hundred and eight miles. When appellee entered the caboose, it was standing in the freight yards at Riverside, about one hundred yards from the station and a little beyond it, toward Indianapolis. In order to reach the car from the station, it was necessary for appellee to cross a public street or highway and go up four or five steps leading over a wall.

Appellant contends that it did not carry passengers on

its freight trains on any portion of its road between Cincinnati and Indianapolis, and had not done so for eight or ten years prior to March 9, 1893; that it carried no passengers in cabooses on any division of its road; that two freight trains carried passengers between Earl Park, Indiana, and Kankakee, Illinois, the former station being 200 miles from Cincinnati; that to these two trains regular passenger cars were attached; that there was a division of the business of the road into freight and passenger.

Appellee rode in the caboose from Riverside until the train reached a point near Brookfield, in the State of Indiana, where, between 4 and 5 o'clock A. M., of March 10th, while appellee was sleeping, another freight train of appellant going in the same direction, ran into the train on which he was riding, demolishing the caboose, instantly killing the conductor and brakeman, who were riding with the plaintiff in the caboose, and pinning appellee against the stove, whereby his right leg and left foot were severely burned, rendering necessary amputation of the leg and a portion of the foot. The collision took place in the midst of a severe snow storm. The train upon which appellee was riding had lost time, and had stopped at Brookfield to take water for the engine, and was just starting when the collision occurred.

There was evidence given that after appellee was removed from the wreck he made admissions to three persons; to one, that he knew he had no business on that train; to another, that he met the yard clerk at Riverside, who took him to dinner; that while he was at dinner he met the crew of the train, and the conductor agreed to carry him to Indianapolis; that he was "busted" in Cincinnati, and did not have any money; that to another, who asked him what he was doing on the train, he answered, "I was bumming my way." Appellee denied having so admitted or stated.

Conductors of freight trains were forbidden by the appellant to carry passengers on their trains. This prohibition was by verbal orders from the superintendent, and had been communicated to the conductor who was in charge of the train in question.

A verdict was rendered against the appellant in the sum of $12,500 and judgment was given thereon.

Section 4 of chapter 51 of the statute of this State con tains, *inter alia*, the following :

" And in every action, suit or proceeding, a party to the same, who has contracted with an agent of the adverse party, the agent having since died, shall not be a competent witness as to any conversation or transaction between himself and such agent, except where the conditions are such that under the provisions of sections 2 and 3 of this act he would have been permitted to testify if the deceased person had been a principal and not an agent."

In view of this statute, the court excluded from the consideration of the jury appellee's testimony concerning the reception by the conductor, from apparent passengers, of what appeared to be railroad tickets.

I think such evidence was admissible. It is only conversations and transactions between the party suing and a deceased agent of the principal sued that are excluded.

A party may testify as to transactions of a deceased agent with persons not parties to the suit.

Appellant says that among the issues presented by the pleadings was : " That the appellee was a passenger to be carried for fare paid, or ready to be paid."

Under this, appellee should have been permitted to answer the question put to him—" Did you have money sufficient to pay your fare ? "—an objection to which was sustained by the court.

It is urged by appellant that there was no proof of payment of fare or readiness to pay it.

Appellee was, by the objection of appellant, prevented from testifying as to whether he had the ability, that is, the money, to pay.

But evidence of payment or readiness to pay was unnecessary.

One who takes passage in a car in which passengers are carried thereby contracts an enforcible obligation to pay fare, and thus becomes entitled to the rights of a passenger.

Shearman & Redfield on Negligence, 4th Ed., Vol. 2, Sec. 488.

The rule is declared in Hutchinson on Carriers, Sec. 565, as follows:

" It is universally agreed that the payment of the fare, or price of the carriage, is not necessary to give rise to the liability. The carrier may demand its payment, if he chooses to do so, but if he permits the passenger to take his seat or to enter his vehicle as a passenger, without such requirement, the obligation to pay will stand for the actual payment, for the purpose of giving effect to the contract with all its obligations and duties. Taking his place in the carrier's conveyance, with the intention of being carried, creates an implied agreement upon the part of the passenger to pay when called upon, and puts him under a liability to the carrier, from which at once spring the reciprocal duty and responsibility. of the carrier."

To the same effect is the case of O. & M. Ry. Co. v. Muhling, 30 Ill. 23–24.

The evidence shows that the caboose car in which appellee rode was used for the carriage of passengers. This may have been in violation of appellant's orders and rules, but appellee knew nothing of them, and was not chargeable with notice of their existence.

Admitted as a passenger he became indebted for his fare; whether he discharged this debt the rules of law did not permit him to testify, and in the absence of evidence as to this, we must consider the case as if we knew that, not having been asked to pay, he did not; for that is the situation presented by the absence of testimony as to either a request for or actual payment.

Appellee not being permitted to testify as to conversation or transaction by him had with any agent of appellant, either before or after he entered the car, the case stands upon the situation presented by the admissible evidence. A contractual relation of passenger and carrier existed by virtue of the situation that is shown.

The jury have found the disputed questions of facts in

appellee's favor; the trial court has approved of the verdict, and we find no sufficient reason for reversing the conclusion reached by the court below.

The following instructions, given at the instance of the defendant, so far as it is concerned, fairly presented to the jury the law applicable to the defense offered by it:

"1.    The burden of proof is on the plaintiff to prove by the greater weight of the evidence that the train upon which he was riding was a train upon which passengers were carried, or that it was adapted to the purpose of carrying passengers, and if the greater weight of the evidence does not show either one or the other of the above state of affairs to be true, the jury should find a verdict in favor of the defendant.

2.    Statements made by the plaintiff after the injury are competent evidence in this case, and should be considered by the jury, along with all the other evidence, in arriving at their verdict.

3.    The verdict of the jury must be based upon the evidence which has been permitted by the court to remain before the jury.    The jury should not be in the least influenced by sympathy or prejudice; their verdict should be arrived at without any regard to the effect it may have upon the plaintiff or defendant; nor should it be influenced in any way by the real or supposed difference in the wealth of the parties.

4.    While the law allows the plaintiff to be a witness in his own behalf, it also provides that the interest of the plaintiff in the result of the suit may be considered for the purpose of affecting his credibility.

5.    There is no implied authority on the part of the conductor of a freight train to allow any one not connected with the railroad to ride on the same without paying fare, and if it is claimed that the conductor of the train upon which plaintiff was riding had authority in that regard, such authority must appear by a preponderance of the evidence, and the burden of proving such authority is upon the one who claims it existed."

Judge Shepard taking no part, and Judge Gary being in favor of reversing the judgment of the court below and remanding the cause, the judgment is affirmed by operation of law.

MR. JUSTICE GARY.

I think there is nothing in the case to charge the appellant as a carrier of passengers.

. The appellee had no ticket, did not take the train at a station, but climbed to it in a manner suspiciously clandestine, upon his own showing, without reference to what is in evidence as to his subsequent declarations.

Not being a competent witness to any consent by the conductor to carry him as a passenger, he is not competent as to any conduct of the conductor from which such consent could be implied; and even if such consent were proved, as it would be, beyond the authority of the conductor, the appellant would not be chargeable. No act of the appellant, inducing belief by the appellee that the train, though freight, was used for passengers, is in the case upon which to found an estoppel.

The case is a fraud.